UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY
and HEALTHY GULF,

    *Plaintiffs*,

    v().

U.S. FISH AND WILDLIFE SERVICE, *et al.*,

    *Defendants*.

Civil Action No. 22-1877 (RDM)

## MEMORANDUM OPINION AND ORDER

The Center for Biological Diversity and Healthy Gulf ("Plaintiffs") bring this suit against the U.S. Fish and Wildlife Service (the "Service") under the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"). Dkt. 1 (Compl.); Dkt. 11 (Am. Compl.). Plaintiffs allege that the Service's decision to list the eastern black rail (the "rail"), an elusive small bird subspecies, as *threatened* instead of as *endangered*, and the Service's related determination that the designation of critical habitat for the rail was "not prudent," violated both the ESA and the APA. Dkt. 11 at 23–27 (Am. Compl. ¶¶ 116–46). Pending before the Court is the Service's motion for a partial voluntary remand without vacatur to permit the agency to reconsider its listing decision and to further explain that decision. Dkt. 21. For the following reasons, the Court will **GRANT** the Service's motion.[1]

An agency may seek voluntary remand in a case challenging its administrative action only if the agency "intends to take further action with respect to" the challenged action. *Limnia,*

---

[1] Plaintiffs "concur that the remand should be without vacatur to allow the threatened listing to remain in place." Dkt. 23 at 26.

*Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017).  Once that "threshold requirement is satisfied, a court has 'broad discretion to grant or deny an agency's motion to remand.'"  *Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 97 (D.D.C. 2019) (quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 426 (D.C. Cir. 2018)).  In exercising that discretion, the reviewing court must "consider whether remand would unduly prejudice the non-moving party" and whether the agency's "request appears to be frivolous or made in bad faith."  *Id.* at 98 (quoting *Util. Solid Waste*, 901 F.3d at 436).

Here, the Service seeks remand "to reconsider its [listing] decision and to provide additional explanation for the decision reached."  Dkt. 25 at 7.  The agency's asserted intent to revisit the challenged decision meets the threshold requirement for granting voluntary remand.  Moreover, as explained below, the Service's motion is neither frivolous nor made in bad faith and granting the motion will not unduly prejudice Plaintiffs.  For these reasons and given the inherent authority of agencies to reconsider their decisions, the Court concludes that the equities weigh decidedly in favor of granting the Service's motion.

Plaintiffs argue that the Court should exercise its discretion to deny the Service's motion for two reasons: first, a remand will unduly prejudice them, Dkt. 23 at 15–19, and second, the Service has failed to present a "substantial and legitimate" reason for seeking remand, *id.* at 19–24.  With respect to their first contention, Plaintiffs argue that granting the Service's motion will prejudice them by "further delay[ing] an endangerment determination and exacerbat[ing] the risk of extinction."  Dkt. 23 at 15.  But Plaintiffs are, in no scenario, guaranteed an endangerment listing determination.  This Court lacks the authority to step into the shoes of the Service and to make its own listing determination; were the parties to litigate this case now, and were Plaintiffs to prevail, the proper remedy would almost certainly still require a remand to the agency for

further consideration of the listing determination. *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657 (2007). Indeed, that is the relief that Plaintiffs themselves seek in their amended complaint. Dkt. 11 at 27–28 (Am. Compl. ¶ G). Thus, even if Plaintiffs are successful, relief from the Court would lead to the same result that Plaintiffs now oppose: remand of the listing decision to the Service for further consideration.

To be sure, remand following a decision on summary judgment would presumably come with the Court's analysis of the relevant legal issues, which might, in turn, affect the Service's analysis on remand. But Plaintiffs' (implicit) reliance on the potential benefit of a judicial decision before the matter is remanded stands traditional principles of administrative law on their head. Ideally, agencies render decisions based on a complete record and their best view of the law and facts, and courts review those fully considered and final decisions; it is not the Court's role to guide the agency in the decision-making process but, rather, to ensure that the agency's decision, once made, is lawful. Absent evidence that an agency is skirting a statutory or regulatory timeline or is engaged in intentional delay, providing the agency with time to reach a fully considered decision, and, if necessary, to reconsider a decision that it has come to doubt, does not constitute prejudicial delay—it is how the system is supposed to work.

But even putting that normal order of things aside, it is far from clear that a decision at the summary judgment stage would, in fact, expedite final resolution of the listing determination in the manner that Plaintiffs posit; even with the benefit of a judicial decision to guide the agency on remand, it is likely that the Service would retain substantial discretion in deciding whether and how to list the eastern black rail. And, as the Service points out, if Plaintiffs are satisfied with the Service's revised listing decision on voluntary remand, they might obtain the relief that they seek—the listing of the rail as endangered—*more* expeditiously than they would following

summary judgment briefing, a judicial decision on the merits, and a court-ordered remand. Although the Service (understandably) has not committed itself to any specific disposition on remand, it has indicated that it is open to reaching the disposition that Plaintiffs seek. *See, e.g.*, Dkt. 25 at 19.  Thus, although it is possible that a voluntary remand might delay the final resolution of the parties' dispute, it is equally possible (and, if anything, more likely) that providing the Service with the opportunity to reconsider its listing decision now will expedite that ultimate resolution.  The Court, accordingly, is unpersuaded that Plaintiffs will suffer undue prejudice from the voluntary remand.

Plaintiffs next argue that the Court should deny the Service's motion because the Service has failed to present "any reason to support reconsideration."  Dkt. 23 at 19 (typeface altered). On Plaintiffs' telling, the agency "must . . . provide a *substantial* and *legitimate* reason as to why it has decided to reconsider its previous determination so the Court can determine whether the request is frivolous or made in bad faith."  *Id.* (emphasis in original).  Elsewhere, Plaintiffs argue that the "Service presents *no* reasons for remand."  *Id.* at 21 (emphasis in original).  As explained above, however, the Service has presented two reasons for seeking voluntary remand—it wants to reconsider the challenged listing decision, and it wants to provide additional explanation. Plaintiffs, for their part, identify no legal requirement that an agency explain *why* it wishes to reconsider a challenged decision, much less that it offer a "substantial" reason for doing so.  The cases make clear, moreover, that an agency need not "confess error or impropriety in order to obtain a voluntary remand"—it can be enough "to profess intention to reconsider."  *Limnia*, 857 F.3d at 387; *see Util. Solid Waste*, 901 F.3d at 436 ("[E]ven if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)); *Am.*

4

*Waterways*, 727 F. Supp. 3d at 98–99 ("An agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand, but it is not always a sufficient condition." (internal citation omitted)).

As the Court sees it, any inquiry into *why* an agency wants to reconsider a decision is simply part and parcel of evaluating whether an agency's request is frivolous or made in bad faith. *See Organic Trade Ass'n v. U.S. Dep't of Argic.*, 2022 WL 951335, at *4 (D.D.C. Mar. 30, 2022) ("[I]f the agency appropriately demonstrates its intent to revisit the challenged decision, a court may consider whether the request for remand is 'substantial and legitimate,' or alternatively, 'if the agency's request appears to be frivolous or made in bad faith.'" (internal citations omitted)). Here, the Service might have more fully explained why it believes that reconsideration is warranted, but that omission is not dispositive for at least two reasons. First, the very nature of the determination at issue is one that turns on ever-evolving scientific evidence and analysis, and Plaintiffs themselves maintain that the Service's analysis requires correction. It is thus unsurprising that the Service wants to reconsider its listing determination. Second, Plaintiffs point to no evidence that the Service's request is premised on anything other than the relevant facts and law. The Court, therefore, assumes, as it must, that the agency is acting in good faith. *See, e.g., Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008).

The Court will, accordingly, grant the Service's motion for voluntary remand and will allow the agency to reconsider and to better explain its listing determination.

\*   \*   \*

That leaves the question whether the Court should adopt the Service's suggested remand schedule of sending a proposed rule to the Federal Register by July 15, 2026. Dkt. 21 at 24. Although a close question, the Court will adopt that schedule in light of the Service's

representation that it needs to "strike a reasonable balance between the additional resources that must be expended on the eastern black rail determination and actions for other species that have no protection under the ESA." Dkt. 25 at 21.  That said, the Court is concerned about how much time the Service has requested, particularly given Plaintiffs' contention that the eastern black rail faces existential risks that, at present, are not sufficiently redressed by its threatened species listing or by other federal and state laws.  As Plaintiffs' request, the Court will therefore retain jurisdiction over this matter during the remand and will require the Service to file status reports every three months.  The Court notes that it has reviewed the Service's current list of priorities.  If any of those priorities are removed or postponed or if the Service's capacity to make listing determinations expands for any reason, the Service should inform the Court in its next status report and should, to the extent possible, propose measures to expedite this matter.  Similarly, Plaintiffs should bring to the Court's attention any changed circumstances that permit or require greater expedition.

## CONCLUSION

For the foregoing reasons, the Service's motion for partial voluntary remand without vacatur, Dkt. 21, is hereby **GRANTED**.  It is further **ORDERED** that: (1) the Service shall submit a status report every three months beginning on or before March 1, 2024, updating the Court as to its progress on the reconsideration of the eastern black rail listing decision and, as described above, apprising the Court whenever the Service's current priorities or capacity changes and proposing corresponding next steps for expediting this matter; and (2) the parties shall submit a joint status report on or before December 15, 2023, advising the Court how they propose proceeding with respect to the first and second claims set forth in Plaintiffs' amended

complaint, Dkt. 11 at 23–24 (Am. Compl. ¶¶ 116–25), concerning the Service's "not prudent" critical habitat determination, which is not subject to the voluntary remand.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 26, 2023